CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 16 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| UNITED STATES OF AMERICA, | ) | Criminal Action No. 6:05-cr-00006-1 |
|---|---|---|
| | ) | (6:08-cv-80081) |
| | ) | |
| | ) | |
| v. | ) | **§ 2255 MEMORANDUM OPINION** |
| | ) | |
| | ) | By: Norman K. Moon |
| CIRO GAMALIEL GARCIA. | ) | United States District Judge |

Ciro Gamaliel Garcia ("Garcia"), a federal inmate proceeding pro se, brings this action pursuant to 28 U.S.C. § 2255, challenging his guilty plea and conviction related to methamphetamine distribution. Garcia claims that his counsel was ineffective for failing to properly investigate the criminal case, and for denying translation services when reviewing the guilty plea agreement and the pre-sentence investigative report ("PSR"). He additionally claims that the government violated his plea agreement and that the court made errors in adopting the PSR. The United States, respondent, filed a Motion to Dismiss, arguing that Garcia waived his right to collaterally attack his conviction in his plea agreement, and in the alternative that Garcia's grounds fail as a matter of law. Because the record conclusively shows that Garcia waived his right to collaterally attack his conviction when he knowingly and intelligently pleaded guilty pursuant to a plea agreement, and because Garcia's claims fail as a matter of law, I will grant the government's Motion to Dismiss and will deny Garcia's § 2255 motion.

I.

Garcia was indicted by a grand jury in this district on January 27, 2005 in a four-count indictment charging him as part of a conspiracy to distribute 500 grams or more of a mixture or

substance containing methamphetamine. On June 2, 2005, the government filed a Superceding Indictment, naming Garcia in four counts.

The United States and Garcia entered into a plea agreement on March 16, 2006. The government agreed not to file a notice pursuant to 21 U.S.C. § 851, which would have enhanced the minimum statutory sentence from ten to twenty years, and Garcia agreed to plead guilty to count one of the Superceding Indictment.[1] Garcia initialed the bottom of every page of the plea agreement and signed the final page. The plea agreement included a collateral attack waiver, that stated: "I further agree to waive my right to collaterally attack, pursuant to Title 28, United States Code, Section 2255, the judgment and any part of the sentence imposed upon me by the Court." The plea agreement also provided that Garcia would lose the benefit of the agreement if he attempted to withdraw his plea. In signing the plea agreement, Garcia acknowledged that he had discussed the agreement, understood it, and was satisfied with his attorney.

Four days later, on March 20, 2006, Garcia appeared before this court for a guilty plea hearing pursuant to Federal Rule of Criminal Procedure 11 ("Rule 11"). Exhibit 1 to Dkt. # 385. Garcia spoke through a translator, and he informed the court that he could not read and understand English. Id. at 1, 3 and 4. Garcia answered a series of questions from the court, acknowledging that he was fully satisfied with his counsel, that he understood the charges against him and his trial rights, and that by pleading guilty he would be adjudged guilty. Id. at 11-14. The Assistant United States Attorney ("AUSA") specifically observed at the Rule 11 hearing that "[a]ll of the defendants" pleading guilty that day, "except for [a codefendant], are being held responsible for a minimum of 500 grams and less than 1.5 kilograms of methamphetamine." Id. at 22-23. The AUSA set out the

---

[1] The remaining counts against Garcia were dismissed at sentencing.

terms of Garcia's plea agreement on the record. Id. at 20-23. Garcia then acknowledged to the court, while under oath, that the terms explained by AUSA were what he expected. Id. at 22. Garcia also acknowledged that he had read the plea agreement, or that it had been read to him, and that he understood it. Id. at 23. He affirmed that he had been given no additional inducement to plead guilty, and that he had not been forced to plead guilty. Id. After being presented with the government's evidence, the terms of the plea agreement, and the evidence he would face, Garcia still pleaded guilty. Id. at 26. Garcia also executed a guilty plea form. Id. at 30; Exhibit 4 to Dkt. # 385.

After Garcia pleaded guilty, but before he was sentenced, the United States Probation Office prepared a PSR. When a probation officer met with Garcia to discuss the PSR, Garcia denied responsibility for the bulk of the methamphetamine for which Garcia had previously acknowledged guilt; specifically he claimed to be responsible for a mere 3 ounces (roughly 85 grams) of methamphetamine, rather than the much greater amount set out in the plea agreement. Exhibit 2 to Dkt. # 385, at 8-10.

Garcia appeared before the court on July 19, 2006 for a sentencing hearing. At this hearing, Garcia was again provided with an interpreter. Id. at 1, 3. During an exchange with the court, Garcia attempted to distance himself from his guilty plea:

> THE DEFENDANT [by interpreter]: Well, I – I wanted to say that I want to change this. I want to fight this, because these papers make it look very bad. They're very incriminating to me.
>
> THE COURT: Well, the defendant pled guilty, so it couldn't be much more incriminating than a guilty plea.

Id. at 4. Garcia went on to state that he had not in fact been involved in the drug conspiracy, but that others had taken part in it. Id. at 5-6. A probation officer testified that Garcia indicated that he had

sold less than 500 grams of methamphetamine, and the government argued on that basis that Garcia was not entitled to a reduction in sentence on the basis of acceptance of responsibility. Id. at 8-9; 14-16. The government recommended a sentence of 360 months. Id. at 17. I reduced Garcia's sentencing guidelines by two-levels for acceptance of responsibility, and sentenced him to 300 months of incarceration, plus five years of supervised release. Id. at 18-19.

In spite of his waiver of the right to file a direct appeal, on July 27, 2006, Garcia filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit, claiming for the first time that he did not understand his plea agreement or guilty plea because his attorney did not provide translation services. Dkt. # 258; see United States v. Garcia, 225 F.App'x 124 (4th Cir. 2007). The Fourth Circuit denied Garcia's appeal, observing that "[a]n appropriately conducted Rule 11 proceeding [] raises a strong presumption that the guilty plea is final and binding." Id. at 124. The Court "conclude[d] that Garcia did not demonstrate a 'fair and just' reason for withdrawing his guilty plea. . . ." Id.

Garcia subsequently filed the § 2255 motion at issue. The government filed a Motion to Dismiss, to which Garcia has responded, and this matter is ripe for disposition.

## II.

As an initial matter, the government argues that Garcia is not entitled to collaterally attack his conviction and sentence because his plea agreement is valid and contained a waiver of the right to file under § 2255. Garcia argues in his opposition to the government's Motion to Dismiss that he is entitled to collateral review in spite of the waiver because he claims harms to constitutional rights.

It is well settled that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." United States v. Lemaster,

403 F.3d 216, 220 (4th Cir. 2005). To bar Garcia from collaterally attacking his conviction, the waiver contained in his plea agreement must be both valid and sufficiently broad in scope to encompass this matter. See, generally, United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994).

### A. Validity of the Waiver

A waiver is valid when "the record . . . show[s] that the waiver was based upon a knowing and intelligent decision." United States v. General, 278 F.3d 389, 400 (4th Cir. 2002) (internal quotation marks omitted). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Lemaster, 403 F.3d at 221-22. If the court determines that a petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. Id. at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy – specifically, whether the district court questioned the defendant about the . . . waiver – the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (quoting General, 278 F.3d at 400). "Thus, the determination 'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)).

Upon review of the record and the parties' pleadings and further submissions, I conclude that Garcia's waiver of collateral attack was valid, because Garcia knowingly and voluntarily entered into

his plea agreement and guilty plea. I carefully affirmed Garcia's knowledge and understanding of the case during the Rule 11 hearing, and whatever deficiencies Garcia now alleges on the part of his counsel cannot overcome the statements Garcia made under oath, with the assistance of a translator, at that hearing.

Garcia now claims that his counsel did not investigate the criminal case against Garcia, ignored the government's exaggeration of the drug amount at issue, and deprived Garcia of translation services when reviewing the plea agreement. However, none of these allegations are extraordinary circumstances capable of overcoming Garcia's prior sworn statements. Lemaster, 403 F.3d at 220. Garcia previously stated on the record and under oath, through an interpreter, that he understood the terms of his plea agreement and the consequences of his guilty plea. Indeed, I questioned Garcia at length, ensuring that the terms of the plea agreement explained at the Rule 11 hearing comported with his understanding of the signed agreement, discussing the trial rights Garcia chose to waive, and further affirming that he had been offered no other inducement than that included in the plea agreement. I also questioned Garcia to ensure that he understood that his actual sentence would be determined by the court, rather than by the A.U.S.A., and that he further understood that he would have to speak with the U.S. Probation Office as part of the sentencing process. Garcia is bound by these representations from the plea colloquy, because he has not presented clear and convincing evidence contradicting his prior, sworn statements. Indeed, this conclusion is bolstered by the Fourth Circuit's finding on direct review that, in spite of similar allegations, Garcia was not entitled to withdraw his plea.

If, in fact, Garcia did not understand his plea agreement and the attendant waivers of rights, he had the opportunity to correct any misunderstanding with a translator present at the Rule 11

hearing. Similarly, if he believed his counsel was ineffective, Garcia had the opportunity to notify the court of such conduct at the Rule 11 hearing. However, Garcia did not opt to make such changes or to make complaints about counsel, and as such, he is bound by his waiver. Indeed, Garcia went on to sign, with a translator present, the written plea agreement form at the end of the Rule 11 hearing. He also expressed satisfaction with his counsel. Thus, the waiver at issue is valid.

## *B. Scope of the Waiver*

The next consideration is whether the waiver bars the type of collateral attack brought by Garcia. The United States Court of Appeals for the Fourth Circuit has distinguished a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal and § 2255 rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the waiver. Attar, 38 F.3d at 732; Lemaster, 403 F.3d at 220 n.2; United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); Blick, 408 F.3d at 169-71.[2] Thus, in addition to evaluating the validity of Garcia's guilty plea

---

[2] The Fourth Circuit has stated that waivers of direct appeal rights do not waive certain challenges to a defendant's sentence. See Attar, 38 F.3d at 727 (allowing petitioner to raise claim that he was denied assistance of counsel at sentencing despite execution of a waiver for direct appeal); United States v. Baker, 109 F.App'x 535 (4th Cir.2004) (per curiam) (unpublished) (characterizing Attar as standing for the proposition that a waiver of appellate rights does not apply when petitioner "asserts a violation of the Sixth Amendment right to counsel in proceedings following the guilty plea."); see also Marin, 961 F.2d at 496 ("a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court.")

The Fourth Circuit has not directly ruled on the scope of collateral attack waivers, and courts within this district have adopted different approaches. However, in Lemaster, 403 F.3d at 220 n.2, the Fourth Circuit stated that though "we have no occasion to consider whether a district court should address similar claims in a § 2255 motion despite a general waiver of collateral attack rights. As we noted above, however, we see no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack

(continued...)

and waiver of collateral attack rights, the court must determine whether his claims falls within the scope of that waiver.³

Construing Garcia's claims liberally, as required by Haines v. Kerner, 404 U.S. 519, 520-21 (1972), Garcia argues first that his counsel provided ineffective assistance of counsel for allegedly failing to investigate the case and failing to provide translation services. Second, he claims that the government violated the terms of the plea agreement as to drug weight and acceptance of responsibility. Third and finally, Garcia claims that the court erred in granting only a two-level reduction for acceptance of responsibility.⁴

Garcia's first claim is barred by his collateral attack waiver, given that he challenges his counsel's alleged failure to investigate the case occurred prior to the plea hearing. In waiving the right to file a § 2255 motion, Garcia waived the right to contest his counsel's performance in the days leading up to his guilty plea. Garcia's other claims concern actions occurring after he entered

---

²(...continued)
rights." Contra, Braxton v. United States, 358 F. Supp.2d 497, 502- 03 (distinguishing waivers of the right to directly appeal from waivers of the right to collaterally attack and concluding that Attar principles are inapplicable to the latter).

³Garcia misstates the terms of his waiver by suggesting that he merely waived non-constitutional claims. The binding terms of his collateral waiver are set forth in the plea agreement, as interpreted by law, not in the court's verbal references to the waiver. Thus, his plea agreement clearly waived the right to collateral attack. The inquiry for the court is whether any of the claims that Garcia seeks to raise are placed outside of the scope of a collateral waiver by law.

⁴Garcia briefly notes that he did not previously raise these issues on direct appeal, because his attorney did not ask him what issues he wished to raise. Garcia has not set forth an additional ineffective assistance of counsel claim. With regard to appellate counsel, there is no constitutional duty to raise on appeal every non-frivolous issue requested by defendant "if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983).
Moreover, Garcia has not set alleged that he suffered any prejudice from this alleged harm. Thus, Garcia has not set out allegations amounting to a full independent ineffective assistance of counsel claim, and, as is set forth in Section III, any such claim would fail because there was no non-frivolous issue to appeal.

the plea agreement, and thus are frequently considered in spite of collateral waivers. See e.g., United States v. Fleurival, No. 5:08cv80068, 2009 WL 982972 (W.D. Va. April 9, 2009) (dismissing claim that government breached the plea agreement on merits, in spite of collateral attack waiver). However, as discussed in the next section, Garcia's remaining claims fail.

### *C. Garcia's Claims Have No Merit*

Garcia has not stated any claim entitling him to relief. To state a claim for relief under § 2255, Garcia would have to show that one of the following occurred: (1) that his or her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) "or that the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law"; or (4) "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In a § 2255 motion, the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). A court may rule on the basis of the filings if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b).

Garcia claims that he is entitled to relief because he was not provided with a translator when meeting with his attorney to review the plea agreement and, later, the PSR.[5] I have already addressed this claim and concluded that Garcia's appeal waiver is binding; furthermore, the Fourth Circuit concluded that, in spite of Garcia's post-hoc complaints regarding a language barrier, Garcia is not

---

[5]Garcia's counsel claims that Garcia is bilingual and that they did not have difficulty communicating. Exhibit 5 to Dkt. # 385, at 1. He additionally notes that he arranged for Garcia's bilingual sister-in-law to meet with Garcia prior to the Rule 11 hearing and sentencing hearing to facilitate any further discussion. Id.

entitled to withdraw his plea.[6] Garcia first argued that he did not understand his plea agreement because of a language barrier when he filed a Notice of Appeal. Garcia did not raise any issue regarding his understanding of the plea agreement or his lawyer's conduct at the Rule 11 hearing. This is in spite of the fact that at the Rule 11 hearing, Garcia was provided with a translator and was asked specifically whether he was satisfied with his counsel and whether he understood the plea agreement. Having affirmed his satisfaction with his counsel, Garcia's new claim of dissatisfaction is barred under Lemaster, 403 F.3d at 221-22, as he is bound by his sworn statements.

Garcia next claims that he was denied effective assistance of counsel because no translator was present when Garcia reviewed his guilty plea agreement and the PSR. Again, this is a new factual allegation that does not appear in Garcia's prior claims. With regard to this particular claim, Garcia did not complain of a language barrier either at his sentencing hearing, when he took part in an extended exchange with the court, or on direct appeal. Indeed, Garcia's submissions in support fo the instant motion damage these claims, as he acknowledges understanding at least some parts of the plea agreement and the PSR, in spite of the alleged language barrier. Indeed, Garcia clearly indicated that he understood elements of his PSR when he personally contested his level of responsibility for the drug conspiracy to the United States Probation Office.

---

[6]To demonstrate ineffective assistance of counsel, a petitioner must first show deficient performance, that is, that counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-91 (1984); see also Williams v. Taylor, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. Strickland, 466 U.S. at 689; see also Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977). In addition to proving deficient performance, a petitioner asserting ineffective assistance, who pleaded guilty, must show that but for counsel's error, he or she would have decided to go to trial. See Hill v. Lockhart, 474 U.S. 52, 53-57 (1985); Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). Garcia cannot establish the performance prong, and thus the court does not consider the prejudice prong.

Even if Garcia made a plausible claim that he had difficulties conversing with his counsel, his argument fails because he cannot demonstrate prejudice. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). Garcia alleges that, as a result of his inability to communicate with his counsel regarding the PSR, he was unable to tell his counsel that the drug amount contained in the PSR was too high and that the government was breaching the plea agreement in the manner set out in Garcia's second and third claims. As set forth below, none of the information that Garcia wished to have communicated related to an actual problem with his PSR. Thus, Garcia cannot show that he suffered any prejudice. Rather, his counsel effectively argued for Garcia, such that Garcia received a two-point reduction in his sentence level.

Garcia's second and third claims are premised on an incorrect understanding of the plea agreement. "Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain." United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993). Garcia claims that the government violated the terms of the plea agreement; however, none of Garcia's allegations constitutes an actual violation of the terms of the agreement. Rather, the events Garcia complains of are explicitly contemplated by the plea agreement.

Garcia claims that the government violated the plea agreement because the PSR provided for enhancements under the sentencing guidelines for his role in the offense, for the drug amount, and for committing an offense while on probation. Enhancements made under the sentencing guidelines do not violate Garcia's plea agreement. Indeed, the plea agreement explicitly stated that "**I understand that a guideline range will be determined presumptively from a variety of factors**

**involved in the offense and related conduct, including my role in the offense and my prior criminal history."** Exhibit 3 to Dkt. #385, at 2 (emphasis in the original). Moreover, the plea agreement did not bar enhancements to Garcia's sentence; rather, it stated that the government agreed not to file a notice pursuant to 21 U.S.C. § 851. Thus, sentence enhancements, made under the U.S.S.G. within the statutory range of punishment, are clearly contemplated and permitted under Garcia's plea agreement.

Garcia further argues that his plea agreement was violated because he was not given a three-level reduction in sentence under the sentencing guidelines for acceptance of responsibility. As an initial matter, though the government did not recommend it, Garcia did receive a two-point reduction for acceptance of responsibility. Garcia's claim again rests on a misunderstanding of his plea agreement. The plea agreement stated that:

> **If,** in fact, I accept responsibility for my actions, testify truthfully if called up on to do so, acknowledge factual guilt before the Court at the time of my guilty plea, during the preparation of my presentence report, and at sentencing, and fulfill the conditions of this plea agreement, I understand that the United States, through its attorney, will recommend that the Court grant me a **two (2) level reduction** pursuant to Guideline Section 3E1.1(b). I must clearly demonstrate acceptance of responsibility for my criminal offenses.

Exhibit 3 to Dkt. # 385, at 3 (emphasis in the original).

Garcia's claim fails, because he plainly did not meet the terms of his plea agreement. At the sentencing hearing, he stated, "There was nothing on me. I've been here 18 months. And the people who had the drugs on them are on the street now doing the same thing again. And you can see that, Your Honor, in the reports and in their records." Exhibit 2 to Dkt. # 385, at 5. Garcia also denied

responsibility for an amount of methamphetamine over 500 grams of drugs to probation.[7] Exhibit 2 to Dkt. #385, at 9. Thus, Garcia failed to accept responsibility for the full scope of his activities, particularly because he insisted that the had trafficked fewer drugs than the amount set forth in the plea agreement. Given Garcia's behavior, the government was not obligated to recommend that Garcia receive any benefit for acceptance of responsibility. Having failed to meet the criteria for the two-level reduction, which was set out in the plea agreement, Garcia can hardly complain that the government failed to recommend a three-level reduction.

Third, Garcia claims that the court committed a "judicial violation" and breached the plea agreement. Dkt. # 370 at 8. As previously explained, the various instances that Garcia complains of did not violate the plea agreement. But more importantly, the court is not obligated to sentence Garcia in accordance with the plea agreement. Indeed, the plea agreement explicitly noted that "the Court is not bound by either [the government's or the defense counsel's] recommendation and may, in its discretion, sentence up to the maximum sentence provided by law." Exhibit 3 to Dkt. 385, at 4. Thus, it is clear that I did not err in granting the two-level reduction for acceptance of responsibility provided for in his plea agreement.

### III.

Garcia knowingly and intelligently agreed to waive his right to collaterally attack his sentence in exchange for several concessions made by the United States, and he was sentenced in the manner to which he agreed. Moreover, considered on the merits, Garcia's attempts to challenge his

---

[7]Garcia complains that the court sentenced him based on an impermissibly high amount of methamphetamine. However, Garcia pleaded guilty to an amount between 500 grams and 1.5 kilograms. Garcia was sentenced for an offense on a range for an amount of methamphetamine greater than 1 kilogram of methamphetamine, but less than 3 kilograms. The PSR found that Garcia was responsible for an amount over 1 kilogram. Thus, the base offense level applied to Garcia was correct.

conviction and sentence clearly fail. For the foregoing reasons, I will grant respondent's Motion to Dismiss. Further, finding that Garcia has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), I will deny a certificate of appealability.

**ENTER**: This 16th day of December, 2009.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE